IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL W. OLIVER, JR.,                          )
                                              )
              Plaintiff,                      )    No. 07 C 5002
        v.                                    )
                                              )    Judge Robert W. Gettleman
INDIAN HARBOR INSURANCE COMPANY,              )
                                              )
              Defendant.                      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul W. Oliver Jr. initiated this action against defendant Indian Harbor Insurance

Company seeking a declaration that he is entitled to coverage under a "Financial Services

Liability Policy" No. ELU090321-05 (the "Policy") issued to AA Capital Partners, Inc.

Defendant filed a counterclaim for a declaration of no coverage. Plaintiff is an insured person

under the policy, which provides coverage for loss from investment fund management and

professional liability, including defense expenses, up to $5 million. Plaintiff seeks coverage (and

defense costs) for claims brought against him in an action entitled Porterfield v. Orecchio, No. 07

C 3654, pending before this court. Defendant has refused coverage based on a provision in the

policy that excludes from coverage losses for claims brought by one insured against another

insured. The parties have filed cross motions for judgment on the pleadings.[1] For the reasons

_____

[1]Defendant has also filed a motion to dismiss Count III of plaintiff's complaint, which
alleges a state law claim for bad faith and unreasonable refusal to provide coverage. In light of
the court's ruling on the motions for judgment on the pleadings, defendant's motion to dismiss is
denied as moot.

discussed below, plaintiff's motion for judgment on the pleadings is denied, and defendant's motion for judgment on the pleadings is granted.

## FACTS

In 2002 plaintiff and John Orecchio formed AA Capital Partners Inc. ("AA Capital"), an investment management firm. AA Capital began soliciting investments in 2002 and eventually provided investment management services for six different pension fund clients.

On September 8, 2006, the Securities and Exchange Commission ("SEC") initiated an action before this court against Orecchio and AA Capital (No. 06 C 4859) alleging that Orecchio had misappropriated at least $10.7 million from AA Capital's clients. Oliver is not named in that action and is not alleged to have misappropriated any funds.

On the SEC's motion, this court appointed W. Scott Porterfield as Receiver for AA Capital (the "Receiver"). On June 29, 2007, the Receiver filed suit against Orecchio and plaintiff, Case No. 07 C 3654 (the "Receiver Action"), alleging various breaches of fiduciary duties and other claims. That complaint does not allege that Oliver participated in or was aware of Orecchio's allegedly improper actions; instead, the receiver alleges that Oliver abdicated his fiduciary duties, thus allowing Orecchio's misappropriations.

Oliver timely notified defendant of a claim under the policy. Defendant expressly denied coverage based on what the parties have termed the "insured v. insured" exclusion.

## DISCUSSION

The parties agree that the claims brought against Oliver in the Receiver Action, as well as his defense to that action, are covered by the policy absent application of the insured v. insured exclusionary provision. That provision provides in relevant part:

2

The Insurer shall not be liable to make any payment for loss in connection with any Claim made against an Insured:

> (F) brought by, or on behalf of, or at the direction of any Insured, except and to the extent such Claim is brought:
>
> .   .   .
>
> > (2) by an Insured with respect to which failure to make such Claim would result in liability to the Insured for failure to do so; or
> >
> > (3) derivatively by a security holder of an Investment Fund who, when such claim is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of any insured.

Under Illinois law, which the parties agree controls, construction of an insurance policy's provisions is a question of law. In construing the policy, the court must ascertain the intent of the parties. The court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. If the words used in the policy are unambiguous, the court must afford them their plain, ordinary, and popular meaning. If the words in the policy are susceptible to more than one reasonable interpretation, however, they are ambiguous and are to be construed in favor of the insured and against the insurer who drafted the policy. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill.2d 90, 108-09 (1992). This is particularly true of provisions that limit or exclude coverage, which are to be construed liberally in favor of the insured, and "most strongly against the insurer." National Union Fire Insurance Co. of Pitts. v. Glenview Park District, 158 Ill.2d 116, 122 (1994).

In the instant case, the wording of the exclusion is clear and unambiguous. It excludes from coverage any claim against an insured, "brought by, on behalf of, or at the direction, any

3

insured," unless one of the exceptions applies. Although plaintiff attempts to suggest otherwise, the issue is not the wording of the policy, but how the Receiver Action is characterized.

Plaintiff argues that the Receiver Action, which is styled "W. Scott Porterfield, as Receiver for AA Capital Partners, Inc.," is actually brought "on behalf of" AA Capital's investors, not AA Capital. According to plaintiff, the plain meaning of the phrase "on behalf of" is "for the benefit of." Given this meaning, plaintiff then argues that "equity receivers are not appointed for the benefit of the company in receivership and do not bring claims for the benefit of that company." Receivers, plaintiff argues, are appointed to protect and act in the interests of the investors and creditors of the company in receivership. None of the cases on which plaintiff relies, however, support this overly generalized statement. For example, although it is true that in SEC v. First Financial Group of Texas, 645 F.2d 429, 436-37 (5th Cir. 1981), the court appointed a receiver for the defendant First Financial and directed him to take control of the corporate assets in order to prevent further injury to the company's investors, that is a far cry from holding that the receiver is not appointed to act on behalf of the company in receivership. To the contrary, the receiver is appointed to conserve and preserve the assets of the company, which, as a by-product, has the effect of benefitting both investors and creditors. That is precisely what Judge Posner said in Scholes v. Lehman, 56 F.3d 750 (7th Cir. 1995), which plaintiff inaccurately describes as recognizing that a receiver brings claims for the benefit of innocent investors. Actually, Scholes holds just the opposite: "[A]n equity receiver may sue only to redress injuries to the entity in receivership . . .." Id. at 753.

In Scholes, as in the instant case, any money ultimately returned to the corporation in receivership would benefit innocent investors, but, as the Scholes court recognized, "that is just

to say that anything that helps a corporation helps those who have claims against its assets." Id. at 754. The receiver's "only object is to maximize the value of the corporation for the benefit of their investors and any creditors . . .." Id. at 755. Therefore, even under plaintiff's interpretation of the wording of the exclusion, the Receiver Action is brought "on behalf of" AA Capital. It seeks to maximize AA Capital's assets, which, in turn, ultimately benefits both the investors and creditors.[2]

Indeed, Oliver recognized as much when he relied on Scholes to argue in his motion to dismiss the Receiver Action that the Receiver did not have standing to bring claims on behalf of the investors. This court agreed that the Receiver could not sue on behalf of the investors, but held that Porterfield was the Receiver for AA Capital, which itself was an ERISA fiduciary to the investor plans and as such had standing to sue Oliver. Porterfield v. Orecchio, 2008 WL 130921 at *3-5 (N.D. Ill. 2008).

---

[2]Oliver argues that the existence of the exception for derivative actions brought by a security holder of an investment fund indicates that the purpose of the exclusion is to avoid coverage for collusive claims. As Oliver has admitted, however, once the court concludes that the plain language clearly excludes coverage, it need not consider the purpose of the exclusion. United Servs. Auto Ass'n. v. Dare, 357 Ill. App. 3d 955, 970-71 (1st Dist. 2005). As Judge Posner stated in rejecting this same argument, "[a] rule plus exceptions is not the equivalent of a standard." Level 3 Communications, Inc. v. Federal Ins. Co., 168 F.3d 956, 959 (7th Cir. 1999).

Accordingly, the court concludes that the Receiver Action is brought on behalf of AA Capital, not the investors. Because AA Capital is an insured under the policy, the exclusionary provision applies. Defendant Indian Harbor Insurance Company's motion for judgment on the pleadings is granted. Plaintiff Oliver's motion for judgment on the pleadings is denied.

**ENTER:**     **February 27, 2008**

Robert W. Gettleman
United States District Judge